Would the attorneys representing the parties who are going to argue please approach, identify yourself, and give us an idea of how much time you'd like? Good morning Judge, Julie Boynton on behalf of the plaintiff appellants. Good morning your honor, Siobhan Murphy on behalf of the defendant Mike Noonan appellee and cross appellant and on behalf of Ruth Noonan as cross appellant. All right Ms. Boynton how much time do you want? Now we have another argument at 1030 so try to keep it a little tight to the timelines. I can try to do 10 minutes then if you've got to go at 1030. Well we don't want to cut you short but just be mindful that we do have another argument. Okay? Same? Same your honor, I'd like to reserve two minutes of that. Okay. As well. We'll figure it out. All right. Thank you. Ms. Boynton. Good morning. If it may please the court, we're here on appeal of three issues, whether the trial court properly vacated its motion or reconsidered its motion to allow us to voluntarily non-suit the case, whether there were factual issues precluding summary judgment, and whether the ruling of Judge Mason should have a collateral stop or arrest judicata. And the court has said whether there's a positive motion eventually got codified, the Illinois Supreme Court versus the Supreme Court.  The court then has discretion to make the decision whether to non-suit or not. So didn't you know that there was a dispositive motion pending after the hearing? No. When the court said that the, invited the summary judgment motion, how could you say no? Because the court said I'm going to make some observations, I want you to consider it. I want you to consider these observations and determine what your next course of action is going to be. Counsel for defense says, well, we don't know. Maybe we're going to appeal it. Maybe we'll file a summary judgment motion. We need to talk to our client to see what we're going to do. There's more back and forth. Mr. Gentleman says I'm going to file a motion for leave to amend the complaint after Mr. Gentleman says he's going to file a motion for leave to amend the complaint. And then defense counsel says, well, then we'll file the summary judgment motion. So stop you right there. Right. So at the hearing, you were told by defendants that they're filing a summary judgment motion. After Mr. Gentleman. It doesn't matter. At the hearing. My question was at the hearing, before you left the courtroom. They indicated that they were going to file a summary judgment motion, although they had indicated previously they didn't know if they were going to file a notice of appeal or a summary judgment. No, no, no, no. But they didn't. That was earlier. Now they said we are filing a motion for summary judgment. And when you left that courtroom, there was an understanding that I was coming. I don't think there was an absolute understanding because the judge, it went back and forth a little bit more, and Judge McGrath says, why don't you all go back, consider your options, and come back in seven days and let me know what you're going to do. Now there was the possibility that they were, but they also filed a notice of appeal in addition to their motion for summary judgment. So I don't think it was clear at all that there would be only a summary judgment motion. But counsel, isn't it a fact, after the hearing on April 11th, the trial court memorialized it in her order that the defendants had seven days to file that motion for summary judgment. So you were very clear that they were given the right and a specific time to file. Isn't that correct? I don't think that's correct. But what Mr. Gentleman came back and said, is it going to be seven days then? And because if it is, I want to file a motion to amend the complaint. And then that's when Judge McGrath says, why don't you all just come back in seven days and we'll see where we are. Well, what does the order say? We'll see what's on the order. I think it says. I'll tell you what it says. Okay, tell me what it says. The order said on April 18th, the motion to vacate or the motion to voluntarily dismiss is granted over defendant's objection that was based upon the fact the court encouraged the defendant to file a motion for summary judgment after a full evidentiary hearing. And defendant's concern that plaintiffs are forum shopping. So it does appear that at the time the voluntary dismissal motion was filed, there was no summary judgment motion on file. By my reading of the record, the summary judgment motion was filed five days after the voluntary dismissal motion was filed. That's correct. So there was no pending. There was no pending dispositive motion at the time we filed our motion to voluntarily not sue. That's what the record seems to indicate. And that's what the record was. And then when they did file something, they filed both on the very same date a notice of appeal as well as their motion for summary judgment. Well, the order I'm looking at says this matter is set for status on April 18th, 2012 at 945 a.m. in room 1907. Defendants may file their motion for summary judgment based on their existing record and incorporating their existing statement of facts. Right. That doesn't indicate that the motion was to be filed on April? No, it says they may because they haven't yet decided. They haven't yet decided that they may do that. We also could file our motion for leave to file an amended complaint. It didn't say that it was going to file it. They said they may file it. That's the point, though, that you were aware that that might happen. And that goes into the judge's determination that this might be forum shopping. Well, that's just our point, though, the fact that something may happen in the future. I mean, it's bad enough if a dispositive motion is pending and the parties know about it. You lose your unfettered right. Now somebody just says, well, we may do this. It's a future possibility. But we haven't done it yet. But we may do this as one of our things. We may file a notice of appeal. We may file this. No, but the court's saying the court doesn't order you. Does the court order you to file a motion for summary judgment? Is that what courts usually do? They order people to file something? Of course not. Of course not. So the word may is typical. And, therefore, they put you on notice at that time that you might be seeing a motion for summary. That's the best the court could do. This isn't a situation where you were caught by surprise because the court entered an order saying that that might happen. And what do you do next is you voluntarily dismiss. So the question is, your argument is, unless there's something on file, then you should have a right to voluntarily dismiss. Is that your argument? No, that's not my argument because that's not the system with Illinois law. Illinois law says if it's determinative that there will be such a motion. But I don't think that was determined here. I don't think they knew if they were going to file a summary judgment. But you just said that the only thing the court can do is say they may file. The court gave them the ability to file. And we also had the right to file a motion for leave to file a demanded complaint. They also had the right to file a notice of appeal. There were lots of options. But none was pending. Were you caught by surprise when they filed the motion? I wasn't trial counsel, so I'm trying to. Okay. I get that. But I would have to say I wouldn't think he would have been wholly surprised by that. Because that is one of the options that were available. I would tend to agree with you because if you put this whole can of worms in perspective, it was not until Judge McGrath stated on the record after she ruled on the motion to dismiss, are you intending on filing a motion for summary judgment? I mean, if she didn't get up and put a big sign up saying to the defendants, why don't you file a motion for summary judgment because I've heard five days of testimony and there's nothing going to change apparently. The facts are all out there. They're all there for ruling. She did everything but tell them file a motion for summary judgment and we'll see what happens. Wink, wink. I mean, you know, it's not hard to figure out what was going on. The question I have, very honestly, is the statute provides that if there is no pending dispositive motion, you have an absolute right to a voluntary dismissal. And here, the way I read the record, there was no motion on file that was dispositive at the time and the plaintiff filed his voluntary dismissal motion. I mean, that is the technical posture of the case as I view it. Is there something I'm missing? No. Okay. Maybe you should get on to your next point. The second point, I guess I'll go to, I assume with respect, well, let me just say with respect to whether summary judgment should have been granted. And I'll focus just on one claim because we have short time. And that's the tortious interference claim. It's our position that the trial court wrongfully dismissed, or wrongfully granted summary judgment on the tortious interference claim. And it's our position that Mr. Noonan intentionally brought a trespass claim, not only against us but against Brandenburg, knowing that that was our major client and knowing that would put pressure on us to try to resolve the trespass case. There was no basis for bringing Brandenburg into the case. The reason there was no basis, Brandenburg never went on the property, never consented. Is there a determination by a court that Brandenburg should not have been brought in the case? The case was resolved by settlement. By settlement. So on what basis can you make all these arguments? Well, the case was settled. So what's the basis? I don't understand. If I file a lawsuit and I name different people and the case settles, it's settled. It's over. That was the trespass case. Right. But what we're saying is that that was part of a plan on Mr. Noonan's part to interfere by bringing Brandenburg into the trespass case without basis. How can you say without basis when the case was settled? If there's no determination by any court dismissing it, you didn't bring a rule 137 motion? Did you bring a rule 137? No, we did. But people can settle cases for a multitude of reasons. One could be we don't want to engage in the cause, not because we think we did anything wrong, but because of the cost of litigation itself. That's irrelevant because what is going on is whether, the question to me is whether this is an anti-SLAPP case. The Anti-SLAPP Act applies. It's a case. And if there's a lawsuit filed and it's settled, is there any penalizing them for bringing Brandenburg? I'll skip over the anti-SLAPP, and this is why anti-SLAPP really doesn't apply to this case. If you look at the timeline, Noonan filed a claim against us in 2004. In 2006, the city, no, two years after we've been on the property, nothing from the city or the state in the meantime, nothing about the condition of the property. The city comes by and is hounding him that there's a problem with the property, and he gets cited. Then he goes to the state, Mr. Noonan calls his attorney to go to the state in 2007. Nobody stops his ability to go and complain to all these people. The state brings suit against my client. My client is wholly vindicated by Judge Mason in that litigation saying they did not put construction debris on the property. They did not put waste on Mr. Noonan's property. And it's only after Mr. Noonan's exhausted all his rights to go to governmental agencies and complain and get relief that my client files their suit to say he's taken wrongful actions against me. Based upon Judge Mason's now finding, we did nothing wrong. We did not put construction debris. We did not put waste. And Mr. Noonan's claims were absolutely false that he was making against our clients. So the SLAPP Act is intended as... There was no debris in the pictures. An expert that you even had was your expert at the beginning said there was debris. No construction debris, and that's what Mr. But there was debris. It wasn't. There was something. The fact that Judge Mason ruled the way she did, again, how... First of all, Mr. Noonan wasn't a part of that case. He didn't testify. He wasn't a party to it. Well, he chose not to testify. The state wanted to call him. He's the one who asked the state to go in and look at it. They had the interests aligned. If there was construction debris, if there was waste that was illegally or improperly on the property, their interests were aligned in having that removed. So if he had testified, then you would not have had a lawsuit? If so... If he had testified in that state case, would that have changed anything? I think Judge Mason would have found the same because I don't think construction debris or waste was found on that property. Counsel, I have a question for you. You indicated you were not involved in the trial, correct? Correct. All right, but you said Mr. Noonan chose not to testify? When the state brought the action, Mr. Noonan wasn't around. You were involved at that point? Well, I looked at the record, and that's what Judge Mason said in her ruling, that the state did not bring him. But saying they didn't bring him is different than him choosing not to testify. And do we know whether or not the state served him with a subpoena? I believe the state was attempting to get him to testify. But all they had to do was serve him with a subpoena if they wanted him to testify. You will agree to that. I will agree to that. And then he wouldn't have a choice. He'd just have to come in. Well, he's the one who instituted the claim. And if his real intention was to make sure that this construction debris was cleaned up, you would think he would be assisting the state in wanting to testify so he could get a positive result. But he chose not to. He chose not to. He didn't appear at trial. He didn't give testimony. And that ended up being the linchpin in Judge Mason's ruling, you know, because it came down to his testimony. That's what Judge Mason said. Right. The fact that he didn't testify. But going back to my point of the slapdash, this wasn't – Let's use that as your last point because we have – I understand. This was my client's attempt to get actual real relief for the harms he saw that was done to him. He wasn't trying to silence or harm Mr. Noonan. All the actions with the state were resolved. So it just doesn't fall into the slap where he's trying to cause a – you know, he had filed the suit as soon as the state served him. That would be one action. What are your damages? How much? $7 million. $7 million. Right. That was the loss of our main customer. After this fiasco, Brandenburg never did business with us again. And it was because of this? Yes. They testified. That's your complaint. Yeah. And they testified. They never did business with us after this. Right. Okay. All right. Thank you very much. Thank you. Ms. Murphy? Thank you, Your Honor. May it please the Court. My partner, Daniel Worker, and I were the trial team who handled this case from its inception for Mr. and Mrs. Noonan. And I think we come to this argument with a sort of personal sense of what happened before the Court in the course of a very lengthy, almost trial hearing on the Anti-Slap Act, which was presented while the case law was developing. So, to some extent, the legal issue was the moving target, but the facts were presented in a very thorough way. And at the end of the Anti-Slap presentation, Mr. Gentleman, for the plaintiffs, myself, and the Court, all had a conversation that we knew there was a full record before the Court as if it were on trial. And it is in that context that we had the conversation with the Court on the 11th where she didn't just rule on the Anti-Slap issue. She also provided her comments on the record because she had a full record before her. And her comments were to encourage the plaintiffs to look at the lack of merit of their case. She also said that the Anti-Slap Act motion was denied right now, and that she wasn't sure she wouldn't reconsider that point. And then there was, in fact, a colloquy about where we were going next. And I do believe it was I who said, why don't we get a motion for summary on file seven days? We'll set a briefing schedule today. In that context, I don't think there's any... But you didn't set a briefing schedule. We got an order that addressed the seven-day time period, and that said we could rely on the record that had already been compiled. Well, my reading of the record that continues was just seven days for status. It didn't set a briefing schedule. Your Honor, that's correct. But it did set the conditions on which the motion for summary judgment, which we had discussed, would be presented. So it wasn't a situation... That's in the April 11th order? That is in the April 11th order. It specifically said we may adopt the record we already had, which was an extensively brief, detailed, and tab record of... Is that in the transcript also, or just in the order? I believe it was discussed in the transcript as well, Your Honor. Okay. Because the import of it was that we didn't need to reinvent the wheel. We had effectively tried this case. And Mr. and Mrs. Noonan sought to come to an end of this case where we had been pressing the argument from the beginning of the case that the claim against them was a genuine anti-SLAPP claim, or a genuine SLAPP claim. So when we said to the court, why don't we get our motion for summary on file seven days, counsel for the plaintiff went back to the office. That was in the afternoon. In the very next morning, walked in a motion to voluntarily dismiss. And what I submit to you, Your Honor, is that the reasoning behind the Funerolo decision is that the formality of whether or not the motion for summary judgment is technically file-stamped is not the important issue as to whether the court had the discretion to choose to hear the summary judgment or not. The importance in Funerolo is that the judiciary has the inherent authority to regulate the cases before it. But that's under the amended statute, right? But the amended statute cannot Am I right? You are correct, Your Honor. Okay. So, I mean, that's where the problem here is. Part one of the statute says you have an absolute right to a voluntary dismissal. Part two or three says that if a dispositive motion is on file, it doesn't say contemplated, thought about, discussed amongst the parties. If there's any of that, it says on file, the court may. That's when the court gets the discretion if you read the statute. Literally. But you cannot in this context take that and read it. Well, now you're going into context. And the reason why you can't, Your Honor, is that the decision in Funerolo was not based on statutory construction. It was based on the separation of powers between the judiciary and the legislature. It is one of the cases that informs the Best v. Taylor Machine Works decision. And what that decision said in Funerolo was that the legislature cannot take the power away from the courts to control the matters before it in the way that plaintiffs here are arguing or that the plaintiffs in Funerolo are arguing. And so we're not looking at a situation where strict statutory construction or any argument of statutory construction is really the core issue. We're looking at the core issue that the basis of the decision in Funerolo was the separation of powers between the co-equal branches of the Illinois government. And the legislature couldn't disrupt that separation either before or after Funerolo. Now, the case law looking at that statute as codified says it codifies Gibellina and Funerolo. It doesn't say it changed the rule in Funerolo. And I think it's because everyone knows it couldn't change the rule in Funerolo. So the court has the discretion based on the inherent authority to regulate the cases in front of it to choose whether or not to reach the summary judgment once that summary judgment is meaningfully before the court. And in this case, we're looking at exactly the situation that the Crawford case that we also cited was concerned about. That race to the courthouse to deprive a party who has done the work to present the summary judgment of the opportunity to do so. And that's why the trial court had the discretion to rule as she did why statutory construction really isn't the issue. And why that statute, if it were to be construed, should be construed in light of the fact that the legislator was acknowledging the Funerolo rule, not trying to overrule it. Was there any serious effort or argument by either side to Judge McGrath in presenting, arguing, in disposing of the summary judgment motion that there was more to come, that the record was absent certain dispositive questions of fact that would change the ruling that was to be rendered based on what was heard during the motion to dismiss? No. Not only was there no 191B affidavit, in discussion with the court, Mr. Gentleman acknowledged that we had a full record. And we had an exhaustive record. Well, I don't think anybody would argue that you don't. The question is ladles. Right. I mean, it's summary judgment was granted in your favor and the underlying complaint by Rem. But it was really a trial on the merits. If one looked at the five days of testimony. Because of those, all of the evidence that would be before the court on a trial, we're really cued into the food and standard, which is really the Illinois Supreme Court sort of anticipating the later cell attack standard that the federal courts came up with. There comes a point when you would direct a verdict for a party. And when you're at that point and the record is complete, it is appropriate to grant summary judgment rather than put the parties through the exercise of trying the case yet again. That's where we were when we presented the motion for summary judgment. And the problems we had in terms of the legal issues before the court are that there are a number. But I think I can sort of give short shrift to some of them. I don't see any possible basis for race judicata or collateral estoppel to apply as to a gentleman who had settled his case and was not even a witness in the state's later proceeding, which had nothing to do with getting his property cleaned. He had an agreement under which his property was cleaned off already. So if the court wants me to address that further, I will. But I just don't see that as a genuine issue here on appeal. Will you address the anti-SLAPP dismissal? I will, Your Honor. We have for Michael Noonan the argument that he should have been granted dismissal on the anti-SLAPP case. And the reason for that argument is that the facts adduced in that extensive trial show that the plaintiffs knew that Mr. Noonan's allegations about the plaintiffs bringing unwanted material to his property were true. I mean, the plaintiffs saw the property before they dug that hole. We have photographs that show what that property looked like. We have the testimony of Mr. Libousakis that it was clean and level and composed of soiled clay. We know the depth of the hole they dug because we have their receipt for it and we have the testimony that it was 34 loads roughly that came out of the hole. We know that when the time came for Mr. Noonan and the plaintiffs to have a discussion about bringing something back to fill the hole, they were talking about approximately 30 loads and that's something the plaintiffs admitted repeatedly and they also admitted repeatedly in the prior litigation that they were bringing enough to fill the hole. We know that approximately 30 or whatever number of loads were needed to fill the large hole or enough to fill the hole was the position the plaintiffs now, who now stand before this court saying that Mr. Noonan was lying, admitted then from 2004 to 2007 was really what they thought their discussion with Mr. Noonan was about. We also know that from Mr. Murphy, in most arguments before this court, we could spend hours because everybody does a great job and they're really prepared but time is limited. I think the question is court applied Sandholm. Why does Sandholm not dismiss the slap action? Sandholm does not dismiss the slap action and I think we need to look a little bit further into the developments of the law. But Sandholm did not overturn the right decision. What it said was you have a situation where the courts are to look for a case that is masquerading as a genuine piece of litigation. This is that case. When you actually dig into the evidence, the plaintiff's claims were things they knew were not true. That's when they're not genuinely seeking to recover. It's not that they have a hope that a court might follow Judge Mason's ruling which was done on an admittedly very limited and incomplete record. It's that they knew the allegations of their claim were not true. And because they knew that those allegations were not true, they knew the condition of the property was clean before they went out there. They knew the deal was for only enough to fill the hole. They knew the agreement was to bring clean soil. They knew that what they brought out there included some construction debris. Those facts they knew and no witness says otherwise defeat the claim they brought here. Now we know that was brought in a retaliatory way because Mrs. Noonan was dismissed under the NSF Act and they didn't appeal it. And we know that it was brought in a retaliatory way because they didn't sue anyone else. So we have a subjectively and objectively frivolous claim based on this record. Can you wrap it up, please? I will, Your Honor. We respectfully submit that both the court properly reached summary judgment and even if summary judgment had not been properly reached, the court should have granted Michael Noonan a dismissal on the merits under the Anti-SLAPP Act. I'll stand on our briefs for the remainder of our arguments unless any of your honors have questions. Thank you. Thank you. Ms. Boynton. I know you're busy today so I'll just make one brief comment regarding the SLAPP Act. We're never too busy for good arguments. Plaintiff's suit is not subject to dismissal under the SLAPP Act because we were never attempting to chill defendant's complaint to governmental entities. Never interfered in that, waited until his complaints were adjudicated, had a favorable ruling, resolved in our favor. We wanted vindication now to restore a good name and to address what my clients believe was the wrongful conduct of Mr. Noonan making false representations. Our position was always that it was the greater amount and it wasn't construction degree. So we think the trial court properly denied the motion for SLAPP as it relates to Mr. Noonan. Thank you, everyone, for your interesting argument and an interesting proposition. We will take this matter under advisement and the court stands in recess. Thank you.